UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVIS WOODS, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| CITY OF UTICA, | |
| Defendant. | |

Case No: 6: 23-cv-0758 (MAD/TWD)

Judge:

Magistrate Judge:

## COMPLAINT

Plaintiff, TRAVIS WOODS ("MR. WOODS") an individual, by and through his undersigned counsel, hereby files this Complaint and sues the CITY OF UTICA ("UTICA") for damages, injunctive and declaratory relief, attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. ("Americans with Disabilities Act" or "ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. ("Rehabilitation Act"), and alleges the following:

## JURISDICTION AND PARTIES

**1.** This is an action for injunctive and declaratory relief, compensatory damages, nominal damages, and attorneys' fees and costs to redress the Defendant's unlawful discrimination to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq*., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.[1]

**2.** With regard to Mr. WOODS's request for nominal damages, it is MR. WOODS's

---

[1] Mr. Woods only seeks damages under the Rehabilitation Act of 1973.

1

position that an award of nominal damages would confer significant civil rights to the public, as a judgment in his favor against UTICA, regardless of the amount, would deter UTICA from discriminating against wheelchair users in the future.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the property which is the subject of this action is in Oneida County, New York.

4. Plaintiff, MR. WOODS, is a resident of New York, Oneida County.

5. MR. WOODS is a qualified individual with a disability under the ADA. MR. WOODS has paraplegia because of a spinal cord injury.

6. Due to his disability, MR. WOODS is substantially impaired in several major life activities and requires a wheelchair for mobility. Specifically, MR. WOODS is unable to walk, stand, or use his legs without assistance.

7. Upon information and belief, UTICA constitutes the political entity which owns and operates the real property, improvements, and programs which are the subject of this action, to wit: Quinn Park, located at 1001-1099 St. Vincent St., Utica, NY 13501, Addison Miller Park, located at 900 – 1699 York St. Utica, NY 13502, F.T. Proctor Park, located at 1 - 1299 Culver Ave. Utica, NY 13501, and Pixley Park, located at 1 - 2299 Noyes St., Utica NY 13502 (hereinafter collectively referred to as "the Properties").

8. Upon information and belief, the Properties are public facilities which are open to members of the public, including MR. WOODS.

9. UTICA is responsible for complying with the obligations of the ADA.

10. All events giving rise to this lawsuit occurred in the Northern District of New York, Oneida County, New York.

## COUNT I – VIOLATION OF TITLE II OF THE
## AMERICANS WITH DISIBILITIES ACT

11. MR. WOODS realleges and reavers Paragraphs 1-10 as if they were expressly restated herein.

12. The Properties are places of public accommodation, subject to the ADA, generally located at Quinn Park, 1001-1099 St. Vincent St., Utica, NY 13501, Addison Miller Park 900 – 1699 York St. Utica, NY 13502, F.T. Proctor Park, 1 - 1299 Culver Ave Utica, NY 13501, and Pixley Park, 1 - 2299 Noyes St., Utica NY 13502.

13. MR. WOODS has visited the Properties in the past.

14. MR. WOODS's last visit to Quinn Park was on or about May 20, 2023.

15. MR. WOODS's last visit to Addison Miller Park was on or about April 28, 2023.

16. MR. WOODS's last visit to F.T. Proctor Park was on or about May 22, 2023.

17. MR. WOODS's last visit to Pixley Park was on or about May 20, 2023.

18. However, upon his arrival at each of the aforementioned parks, MR. WOODS observed visibly obvious—and dangerous—physical barriers.

19. As a result of these barriers, MR. WOODS's safety would have been at risk if he had attempted to utilize the Properties.

20. As such, MR. WOODS was deterred, and is still deterred, from attempting to utilize the Properties.

21. While at the Properties, MR. WOODS observed and encountered numerous architectural barriers.

22. MR. WOODS has personally observed and is aware of mobility-related barriers at the Properties, as discussed below in Paragraph 39.

23. MR. WOODS intends to, and will, enter the Properties to utilize its services in the future,

but fears that he will encounter the same barriers to access which are the subject of this action.

24. The barriers discussed below in Paragraph 39 are excluding MR. WOODS from the programs, services, and activities offered at the Properties.

25. MR. WOODS presently fears that he will encounter the mobility-related barriers which exist at the Properties when he returns to the Properties in the near future.

26. MR. WOODS has been to the Properties primarily to attend community events, to exercise, and to enjoy nature.

27. Upon information and belief, UTICA has failed to adopt any alternatives to barrier removal which would provide MR. WOODS with meaningful access to the basic services which are available for public use at the Properties.

28. The services that MR. WOODS has not been able to access at the Properties are the fields, parking, walkways, picnic tables, bleachers, restrooms, and the general recreation available to non-disabled persons at the Properties.

29. On May 19, 2023, MR. WOODS emailed four (4) separate letters, one for each of the above-named parks, to David Short, Commissioner of Utica City Parks.

30. In his correspondence, MR. WOODS advised (1) the nature of his disability and use of a wheelchair; (2) that the letter was a request for reasonable accommodation; (3) that he had encountered widespread non-compliance with the ADA and RA when it comes to Quinn Park, Addison Miller Park, F.T. Proctor Park, and Pixley Park and, as examples, he explained that there are no reserved parking spaces, reserved parking signs, or accessible aisles, the public rights of way paths are uneven, broken, and disrupted by patches of grass, the restrooms are inaccessible, bleachers and picnic benches are located

on grass, etc.

31. MR. WOODS advised that he expected that the ADA barriers would be remedied and that the parks would be brought into compliance with the requirements, provisions, and regulations of the ADA and the Rehabilitation Act within twenty (20) days.

32. On June 16, 2023, Zachary C. Oren, First Assistant Corporation Counsel for the UTICA, mailed a response to MR. WOODS which included a spreadsheet of a "near final budget" for ADA compliance at each of UTICA's parks, showing a yearly budget from 2022 to 2028 for each park. Mr. Oren gave no indication that any modifications or improvements would be completed nor did he give a timeframe for completion. Notably, the spreadsheet showed a zero yearly budget for F.T. Proctor Park until 2026, a zero yearly budget for Quinn Park until 2027, a zero yearly budget for Pixley Park until 2026, and a modest budget for Addison Miller Park in 2023 only.

33. The letter mentioned no concrete plans to make any of the alterations and improvements to the Properties.

34. DEFENDENTS have not identified any stopgap measures or other methods, outlined in 28 C.F.R. § 35.150, for achieving ADA compliance in the interim.

35. Additionally, UTICA recently added a new playground to Proctor Park, but it did not include an accessible route to the playground, in violation of the alteration standard of the ADA outlined in 28 C.F.R. § 35.150.

36. Despite the passage of more than 20 days, UTICA has not advised MR. WOODS that his request will be implemented, that his request is unreasonable, or that an alternative accommodation will be provided.

37. To date, upon information and belief, none of the barriers have been remedied.

38. MR. WOODS is deterred, and will continue to be deterred, from utilizing the Properties as a patron until the barriers to access that are at issue in this case have been remedied and modified.

39. Upon information and belief, UTICA's mobility-related ADA barriers and violations include:

Quinn Park:

    A. There are no accessible-designated parking spaces, signs, or access aisles. Additionally, the parking areas are made of gravel and dirt, which are inaccessible to wheelchair users.

    B. There is no accessible route from the parking area to the basketball courts.

    C. The paths on the entire park are broken and uneven, making it impossible for a wheelchair user to use them.

    D. Some amenities, like the basketball courts, have no paths leading to them.

    E. The picnic tables, benches and water fountains are located in grass, making them inaccessible to wheelchair users.

    F. The water fountain is too high, making it inaccessible for wheelchair users.

    G. The restroom entrances have high thresholds, making them inaccessible to wheelchair users.

    H. Other mobility-related ADA barriers, both interior and exterior, to be identified following a complete inspection.

Addison Miller Park:

    I.    There are no accessible-designated parking spaces, signs, or access aisles. Additionally, the parking areas are made of gravel and dirt, which are inaccessible to wheelchair users.

    J.    There are no accessible paths or public rights of way from the parking lot to the amenities, just a large grass-covered hill.

    K.    The walking paths are narrow and made of sparse, broken patches of blacktop, making them inaccessible to wheelchair users.

    L.    There are no crosswalks or sidewalks to access the park entrance.

    M.    The bleachers are located in grass, making them inaccessible to wheelchair users.

    N.    Many of the amenities are not accessible by any path.

    O.    Other mobility-related ADA barriers, both interior and exterior, to be identified following a complete inspection.

F.T. Proctor Park:

    P.    There is no accessible route from the parking area to the park.

    Q.    The paths are broken and uneven, making it impossible for a wheelchair user to use them.

    R.    Many of the amenities are not accessible by any path.

    S.    The picnic tables and bleachers are located in grass, making them inaccessible to wheelchair users.

    T.    The picnic tables do not have clearance for wheelchair users.

    U.    The restrooms are inaccessible to wheelchair users.

  V. The bleachers on the basketball court are inaccessible to wheelchair users.

  W. The bleachers in Sal Longo Field are inaccessible to wheelchair users due to a grass barrier separating the walkway from the wheelchair ramp to the bleachers.

  X. The new playground recently added has no accessible route to the playground.

  Y. Other mobility-related ADA barriers, both interior and exterior, to be identified following a complete inspection.

Pixley Park:

  Z. There are no accessible-designated parking spaces, signs, or access aisles.

  AA. There is no accessible route from the parking area to the park.

  BB. The paths are broken, uneven, too narrow, and are interrupted by patches of grass, making it impossible for a wheelchair user to use them.

  CC. Many of the amenities are not accessible by any path.

  DD. The paved volleyball court/ recreation area is cracked and uneven making it impossible for a wheelchair user to use it.

  EE. The basketball court does not have an accessible entrance.

  FF. The bleachers and playground equipment are located in grass, making them inaccessible to wheelchair users.

  GG. The playground has a high perimeter threshold.

   HH. The restrooms are inaccessible to wheelchair users.

   II. Other mobility-related ADA barriers, both interior and exterior, to be identified following a complete inspection.

40. 42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

41. Many of the barriers at issue in this case are a result of construction or modification work performed after the passage of the ADA.

42. As such, the barriers at issue that were constructed or modified after the passage of the ADA are obligated to comply with the strict "new construction / alteration" standards.

43. Despite UTICA's obligation to comply with the new construction / alteration standards, it has failed to do so.

44. The lack of accessibility should come as no surprise to UTICA. According to a "Master Plan" developed by UTICA, published on November 2, 2018, on page 40 UTICA states:

> ADA accessibility needs to be addressed throughout the park system. One way to make the park system more inclusive is by creating accessible routes from parking lots to park facilities. Another is by developing an inclusive playground with accessible play equipment.

45. On page 70 of the same report, entitled *Looking to the Future*, the first general recommendation was:

> 1. ADA Accessibility: Improve ADA accessibility within and throughout the park system by incorporating accessible routes and parking areas, and inclusive play equipment. Buildings should have accessible ramps and railings.

46. Thus, despite acknowledging that accessibility needs to be "addressed throughout the

9

system," UTICA is continuing to build inaccessible elements in its parks. Additionally, UTICA has permitted numerous existing ADA barriers to remain, un-remediated, more than thirty years after the passage of the ADA.

47. UTICA has discriminated against MR. WOODS by denying him full access to the services, programs, and/or activities by failing to make its facilities readily accessible as required by U.S.C. §12132 and its implementing regulations 28 C.F.R. Part 35.101-35.190 *et. seq*.

48. UTICA has discriminated, and is continuing to discriminate, against MR. WOODS in violation of the ADA by excluding and/or denying MR. WOODS the full and equal benefits of its services, programs, and/or activities by failing to, inter alia, have accessible facilities. MR. WOODS personally experienced the numerous barriers to access on the Properties.

49. 28 C.F.R. § 35.130(4) states that "[a] public entity may not, in determining the site or location of a facility, make selections – (I) [t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination..." UTICA has violated this provision by providing its services, programs, and/or activities at inaccessible facilities.

50. UTICA has discriminated against MR. WOODS by excluding him from participation in, and denying the benefits of, the services, programs, and/or activities at its Properties because of MR. WOODS's disability, all in violation of 42 U.S.C. § 12132.

51. Upon information and belief, UTICA continues to discriminate against MR. WOODS by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities,

facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise treated differently than other individuals because of failure to remove architectural barriers.

52. The above conduct constitutes intentional discrimination.

53. The above conduct constitutes deliberate indifference.

54. Upon information and belief, MR. WOODS has been denied access to, and has been denied the benefits of services, programs and/or activities of UTICA's Properties, and has otherwise been discriminated against and damaged by UTICA because of UTICA's discrimination, as set forth above.

55. MR. WOODS will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. Furthermore, as required by the ADA and other remedial civil rights legislation, to properly remedy UTICA's discriminatory violations and avoid piecemeal litigation, MR. WOODS requires a full inspection of UTICA's Properties in order to catalogue and cure all the areas of non-compliance with the ADA.

56. MR. WOODS has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from UTICA pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

57. MR. WOODS is suffering irreparable harm.

58. Pursuant to 42 U.S.C. § 12131, *et seq*., this Court is provided authority to grant MR. WOODS's injunctive relief including an Order for UTICA to alter the Properties to make

its programs, services, and accommodations readily accessible to and useable by MR. WOODS and all other persons with mobility-related disabilities as defined by the ADA.

## COUNT II -

## VIOLATION OF THE REHABILITATION ACT

59. MR. WOODS adopts and re-alleges the allegations contained in paragraphs 1-58 as if fully stated herein.

60. MR. WOODS brings this claim against UTICA, based upon Section 504 of the Rehabilitation Act, 29 U.S.C. §794, *et seq*.

61. The Rehabilitation Act provides that:

> *No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.  29 U.S.C. § 794(a).*

62. Upon information and belief, a non-exclusive list of UTICA's violations of the Rehabilitation Act and discriminatory conduct against MR. WOODS are evidenced by:

   A. denying MR. WOODS access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations, and services offered at the Properties;

   B. by otherwise limiting MR. WOODS in the enjoyment of the rights, privileges, advantages, and opportunities enjoyed by individuals without disabilities who receive UTICA's aids, benefits, and services at the Properties;

   C. making facility site or location selections that have the effect of discriminating against individuals with disabilities, and excluding them

       from and denying them the benefits of, and defeating or substantially impairing the accomplishment of the objectives of, the services, programs, and activities offered by UTICA at the Properties;

    D.    failing to administer services, programs, and activities in the most integrated setting appropriate to the needs of MR. WOODS;

    E.    excluding MR. WOODS from participation in, and the benefits of, UTICA's services, programs, and activities as a result of UTICA's Properties being inaccessible to or unusable by MR. WOODS; and

    F.    failing to design and/or construct new facilities, or make alterations to existing facilities, which are readily accessible to and useable by individuals with disabilities.

63. Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act at the Properties which MR. WOODS is more likely than not going to encounter upon future visits to the Properties. MR. WOODS brings this action:

    A.    to redress injuries suffered as a result of UTICA's discriminatory actions and inactions, as set forth herein;

    B.    to reasonably avoid further and future injury as a result of UTICA's ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the ADA and Rehabilitation Act;

    C.    to ensure UTICA's Properties are accessible as required by the relevant applications of Title II of the ADA;

    D.    to be made whole and ensure future compliance; and

    E.    to reasonably avoid future ADA and Rehabilitation Act litigation

    involving the same Properties and under the same laws, as set forth herein, with its impact on otherwise scarce judicial resources.

64. Only through a complete inspection of the Properties and related facilities, undertaken by MR. WOODS and/or his representatives, can all said violations be identified and cured so as to ensure access for people with mobility-related disabilities, the primary purpose of this action.

65. Upon information and belief, UTICA is the recipient of federal funds.

66. Upon information and belief, as the recipient of federal funds, UTICA is liable for damages to MR. WOODS as a result of its acts and omissions constituting intentional discrimination. It is MR. WOODS's position that even an award of nominal damages in his favor would confer significant civil rights to the public, as a judgment of against UTICA, regardless of the amount, would likely deter UTICA from discriminating against individuals with disabilities in the future.

67. As set forth above, MR. WOODS has been denied access to, and without the relief requested herein will continue to be denied the access to, the goods, services, programs, facilities, activities, and accommodations offered by UTICA, solely by reason of his disability, and has otherwise been discriminated against and damaged solely by reason of his disability, as a result of UTICA's Rehabilitation Act violations set forth above.

68. MR. WOODS has been obligated to retain undersigned counsel for the filing and prosecution of this action. MR. WOODS is entitled to recover reasonable attorneys' fees, costs, and litigation expenses from UTICA pursuant to 29 U.S.C. §794(b).

69. Pursuant to 29 U.S.C. §794(a), this Court is provided authority to grant MR. WOODS injunctive relief, including an Order that UTICA alter the subject premises, facilities,

services, activities, programs, and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act, or an Order that UTICA close all premises and facilities and discontinue all non-complying services, activities, programs, and accommodations until the requisite modifications are completed. This Court is also provided authority to grant MR. WOODS compensatory damages for UTICA's discriminatory actions.

70. Upon information and belief, as set forth herein, UTICA has violated the Rehabilitation Act by intentionally excluding MR. WOODS, solely by reason of his disability, from the participation in, and denying him the benefits of, and have otherwise subjected him to discrimination under UTICA's programs and activities. These actions constitute intentional discrimination and deliberate indifference.

## **PRAYER FOR RELIEF**

WHEREFORE, MR. WOODS prays that:

A. This Court issue a Declaratory Judgment that determines that UTICA is in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*;

B. This Court issue a Declaratory Judgment that determines that the Properties, programs, and activities owned, operated and administered by UTICA are in violation of the Rehabilitation Act;

C. This Court grant permanent injunctive relief against UTICA including an Order to make all required alterations to the Properties; or to make such Properties readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require UTICA to make

        reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such stops that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of failure to remove mobility-related barriers;

D.   This Court enter an Order directing UTICA to alter and modify the Properties and its programs, services, and accommodations to comply with the ADA and the Rehabilitation Act;

F.   This Court award MR. WOODS monetary damages (including nominal damages) pursuant to the ADA and the Rehabilitation Act, for the harm caused by UTICA's discrimination;

F.   This Court award MR. WOODS reasonable attorneys' fees, costs, and litigation expenses pursuant to 29 U.S.C. § 794a(a)2 and 42 U.S.C. § 12205 and 28 C.F.R. § 35.175; and

G.   Such other relief as the Court deems just and proper, and/or is allowable under Title II of the ADA and the Rehabilitation Act.

        Respectfully Submitted,

        (Signature block on following page)

/s/ Andrew D. Bizer

BIZER & DEREUS, LLC
Attorneys for Plaintiff
Andrew D. Bizer (NY #4208955)
andrew@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996