**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**TRAVIS WOODS,**

**Plaintiff,**

vs.

**6:23-CV-758 (MAD/TWD)**

**CITY OF UTICA,**

**Defendant.**

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **BIZER & DEREUS**<br>3319 St. Claude Avenue<br>New Orleans, Louisiana 70117<br>Attorneys for Plaintiff | **ANDREW D. BIZER, ESQ.** |
| **FOTI HENRY PLLC**<br>403 Main Street – Suite 225<br>Buffalo, New York 14203<br>Attorneys for Defendant | **DAVID H. WALSH, IV, ESQ.**<br>**DAVID CARTWRIGHT, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff commenced this action on June 22, 2023, alleging violations of Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA"), at four municipal parks located in the City of Utica. *See* Dkt. No. 1. Currently before the Court is Plaintiff's motion for partial summary judgment, seeking judgment in his favor as to his claims for injunctive relief under the ADA and RA. *See* Dkt. No. 39.

## II. BACKGROUND

Plaintiff is a T-4 paraplegic due to a gunshot wound to his back. *See* Dkt. No. 49-11 at ¶

1.[1]  Plaintiff cannot walk or stand and uses a wheelchair for mobility. *See id.* at ¶ 3.

Plaintiff lives four miles from Quinn Park, five miles from Proctor Park, and six miles from both Pixley Park and Addison Miller Park (collectively, the "Parks"). *See id.* at ¶¶ 4-6. Plaintiff has visited the Parks most recently in the summer of 2024. *See id.* at ¶ 7. Plaintiff claims that he "has visited the Parks to either watch basketball games or engage in 'fun days' where DJs play music and the community can congregate." *Id.* at ¶ 8.

At each of the Parks, Plaintiff has encountered barriers that restrict his access to them. Plaintiff claims that he cannot go inside Pixley Park because of the architectural barriers he personally encountered and is forced to watch the basketball games from his car or not watch the basketball games at all. *See* Dkt. No. 49-11 at ¶ 9. Additionally, the parking lot at Pixley Park does not contain any designated-accessible parking. *See id.* at ¶ 10. "Because of the lack of designated-access parking space access aisles, he is afraid that if he exits his vehicle, another car will park too close to his vehicle, making it impossible for him to re-enter his vehicle." *Id.* at ¶ 11. Moreover, Pixley Park lacks "accessible routes." *Id.* at ¶ 12. Therefore, if he wants to access the basketball courts, soccer field, volleyball court, or restrooms, he must traverse grass and dirt,

---

[1] In response to Plaintiff's motion, Defendant objects to many of the facts set forth in Plaintiff's statement of material facts based on the fact that the statements are supported by an affidavit that "is not notarized, contains a typed date, and it is unclear whether the signature – in the absence of an original copy – is authentic." Dkt. No. 49 at 20-21. Following Defendant's response, Plaintiff moved to strike the affidavits at issue and replace them with identical affidavits that contain wet dates and signatures. *See* Dkt. No. 51. The Court granted that request. As such, this aspect of Defendant's objection is moot. Although the new affidavits are still not notarized, this objection is without merit. Pursuant to 28 U.S.C. § 1746, an "unsworn declaration made under penalty of perjury has the same evidentiary weight as an affidavit if it includes language in substantially the same form as 'I declare (or certify, verify, or state) that the foregoing is true and correct' followed by a signature and date of execution." *Cross v. State Farm Ins. Co.*, 926 F. Supp. 2d 436, 440 (N.D.N.Y. 2013) (quotation and other citation omitted); *see also LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (same). Accordingly, the Court will consider the facts contested solely on this ground as undisputed.

"which is dangerous for a wheelchair user such as [Plaintiff]." *Id.* at ¶ 13. Plaintiff has also observed cracked and broken sidewalks around the perimeter at Pixley Park and has declined to utilize them due to their dangerous condition. *See id.* at ¶ 14.

Similarly, at Addison Miller Park, Plaintiff claims that the parking lot does not contain any designated-accessible parking, making it likely that another vehicle will park too close to his, making it impossible to re-enter his vehicle. *See id.* at ¶¶ 17-18. Additionally, the parking lot at Addison Miller Park is not paved and is made of gravel, which is dangerous for Plaintiff to traverse. *See id.* at ¶ 19. Moreover, there is a lack of accessible routes at this park, requiring him to traverse grass and dirt to access the basketball courts, baseball field, pool building, bleachers, or restrooms. *See id.* at ¶¶ 20-21. Addison Miller park is also surrounded by cracked and broken sidewalks, rendering them dangerous for him to use. *See id.* at ¶ 22.

Quinn Park's parking lot also does not have any designated-accessible parking spots, and lacks accessible routes to the picnic tables, benches, water fountains, basketball courts, or restrooms, requiring him to traverse grass and dirt. *See id.* at ¶¶ 24-28. Additionally, there is a threshold at the restroom in Quinn Park that is too high, rendering it inaccessible. *See id.* at ¶ 29. As with the other parks, the perimeter around Quinn Park is comprised of cracked and broken sidewalks, making them dangerous for him to utilize. *See id.* at ¶ 30.

Proctor Park also lacks accessible routes, requiring him to traverse grass and dirt to access the basketball courts, baseball fields, soccer fields, or restrooms. *See id.* at ¶¶ 33-34. "Additionally, the path to the baseball area and attendant restrooms is located up a steep hill and he does not wish to 'chance it' by rolling up the hill." *Id.* at ¶ 35. Plaintiff also claims that the picnic tables at this park are located in the grass with no accessible route to them and that they do not have the proper clearance for a wheelchair user to properly use. *See id.* at ¶¶ 36-37.

Plaintiff and Defendant each hired an expert to inspect the Parks for violations of the ADA Accessibility Guidelines ("ADAAG"). *See* Dkt. No. 49-11 at ¶ 38. These experts both identified many barriers to access at the Parks that violate the ADAAG, which are generally set forth above. *See id.* at ¶¶ 38-85.

On May 19, 2023, Plaintiff sent four undated letters to the City Commissioner of Parks outlining his concerns with the four Parks at issue in this case. *See* Dkt. No. 49-1. Specifically, in those letters Plaintiff raised issues that he claimed he observed in April 2023. *See id.*

On June 8, 2023, the City's Corporation Counsel sent Plaintiff a letter "in response to four e-mails that Plaintiff sent on May 19, 2023, to the City's Department of Public Works Commissioner, David Short, which complained of alleged ADA violations at Proctor, Quinn, Pixley, and Addison Miller Parks." Dkt. No. 49-2. In the June 8, 2023 letter, Corporation Counsel informed Plaintiff that the City "is working to improve ADA access to said Parks and will next week provide you with a budget for said Parks. We hope that this will remedy the situation and address your concerns." *Id.* On June 16, 2023, the City's Corporation Counsel sent Plaintiff another letter that enclosed a "near final budget for the ADA compliance at the City Parks." Dkt. No. 49-3. The "near final budget" outlined expenditures the City planned to allocate for its several parks between budget years 2022-23 through 2027-28, and included categories such as "ADA compliance" and "ADA improvements." *Id.* Approved in 2022, the City formulated an overall plan to identify the ADA deficiencies in all of its parks and to fund and remediate all such deficiencies. *See* Dkt. No. 49-6.

In 2021, Plaintiff commenced another action against the City, *Woods v. City of Utica*, No. 6:21-cv-1015 (N.D.N.Y.), which involved claimed violations of the ADA and RA with respect to

one of the City's parks – Wankel Park.[2] During the course of those proceedings, the City's Corporation Counsel submitted a status report (with Plaintiff's consent), dated May 27, 2022, informing the Court that the City was undertaking plans to make improvements not only to Wankel Park, but also to other City parks. *See* Dkt. No. 49-8. Subsequently, on February 17, 2023, Plaintiff's counsel submitted a "Joint Status Report" in which he outlined for the Court that the City had "yet to respond to Plaintiff's December 18, 2022 settlement offer that would encompass ADA remediation of all the parks in Utica, not just [Wankel] Park" and that Plaintiff "believes it would be beneficial to secure an agreement that makes all the parks compliant with the ADA." Dkt. No. 49-9. Thereafter, on April 27, 2023, the parties submitted a Notice of Settlement and requested a sixty-day order of dismissal. The parties ultimately resolved the case through the execution of a General Release, dated May 19, 2023. *See* Dkt. No. 49-10. The General Release contained terms releasing the City "from any and all claims for any relief to the ADA, 42 U.S.C. § 12181, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, such as the claims that were asserted or could have been asserted in the above-captioned action." *Id.* at 3. In resolving the case, Plaintiff was compensated $20,000 and his counsel received $25,000 in attorneys' fees and costs, for a total settlement amount of $45,000. *See id.* at 5.

## III. DISCUSSION

### A. Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no

[2] Plaintiff has commenced approximately thirty (30) actions over the past several years in this Court asserting violations of the ADA and RA. *See Woods v. City of Rome*, No. 6:22-cv-628, 2024 WL 3377453, *18 n.42 (N.D.N.Y. July 11, 2024) ("The Court notes that ... a review of its CM/ECF system confirms Defendant City's assertion that Plaintiff has settled 26 of his 30 other ADA lawsuits in this District (the 27th lawsuit resulting in a jury verdict against him, the 28th lawsuit resulting in summary judgment for the defendants, and the 29th lawsuit resulting in a dismissal of the action without prejudice for lack of standing").

genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B. Prior Release**

In its response to Plaintiff's motion, Defendant contends that "Plaintiff's motion should be denied, and instead, this action dismissed, on ground that it is barred by [a] prior release executed between the same parties." Dkt. No. 49 at 15.[3] Defendant argues that the General Release in the prior action is sufficiently broad to encompass the claims in this action and that it covers all

---

[3] Although Defendant asks this Court to dismiss Plaintiff's complaint, Defendant has not cross moved to dismiss.

claims that could have been asserted in the prior action. *See id.* at 16-18. In his reply, Plaintiff contends that the General Release does not impact this litigation because "[t]he factual narrative alleged in the Complaint could not 'have been asserted' in the Prior Lawsuit as the notice and opportunity to cure facts did not arise until *after* the Wank[el] Agreement was executed." Dkt. No. 52 at 5 (emphasis in original). Plaintiff further argues that the prior action "pertains to events that occurred to Mr. Woods in 2021," while the instant case pertains "to different parks, different time periods, and different requests for accommodation." *Id.* at 5-6. As such, Plaintiff contends that the General Release in the prior action does not "bind Mr. Woods to release future claims." *Id.* at 6. Finally, Plaintiff notes that when Defendant's counsel (Zachary Oren) responded to Plaintiff's May 19, 2023, correspondence identifying perceived issues with the Parks at issue in this action, Mr. Oren "sent his June 8, 2023, correspondence directly to Mr. Woods" in violation of the settlement agreement in the prior action, which required correspondence to be directed to Plaintiff's attorney, Mr. Bizer. *See id.* at 5.

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005). Although "federal law governs the validity of releases of federal causes of action," courts in this Circuit "look to state [contract] law to provide the content of federal law" in cases challenging the validity of such releases. *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir. 1993); *see also Fernandez v. City of New York*, 502 Fed. Appx. 48, 50 (2d Cir. 2012). Here, the General Release does not include a choice-of-law provision, and the parties do not address choice of law in their papers. Nevertheless, because the parties have "impliedly manifested their acquiescence to New York law controlling" the interpretation of the General Release by relying exclusively on New York law in their submissions, *DER Travel Servs., Inc. v. Dream Tours & Adventures, Inc.*,

No. 99-cv-2231, 2005 WL 2848939, *6 (S.D.N.Y. Oct. 28, 2005) (collecting authorities), the Court will apply New York law.

"Under New York law, a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." *Arzu v. City of New York*, No. 13-cv-5980, 2015 WL 4635602, *4 (S.D.N.Y. Aug. 3, 2015) (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998); *Skluth v. United Merchants & Mfrs., Inc.*, 163 A.D.2d 104, 106 (1st Dep't 1990)); *see also Tromp v. City of New York*, 465 Fed. Appx. 50, 51 (2d Cir. 2012) ("Where the language of [a] release is clear, effect must be given to the intent of the parties as indicated by the language employed"); *Davis & Assocs., Inc. v. Health Mgmt. Servs., Inc.*, 168 F. Supp. 2d 109, 113 (S.D.N.Y. 2001) ("[A] release is binding on the parties absent a showing of fraud, duress, undue influence, or some other valid legal defense").   "'Words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies.'" *Tromp*, 465 Fed. Appx. at 52 (quoting *A.A. Truck Renting Corp. v. Navistar, Inc.*, 81 A.D.3d 674, 675 (2d Dep't 2011); *Lucio v. Curran*, 2 N.Y.2d 157, 161-62 (1956)).  "'[W]hen general language is used in the releasing document, the release is to be construed most strongly against the releasor.'" *Id.* (quoting *Consorcio Prodipe v. Vinci*, 544 F. Supp. 2d 178, 189 (S.D.N.Y. 2008)).

Initially, the Court rejects Plaintiff's argument that his claims in this action were not ripe at the time the General Release was executed because "the notice and opportunity to cure facts" did not arise until after the General Release was executed. *See* Dkt. No. 52 at 5.  The Court notes that Plaintiff provides no caselaw in support of this argument.  Undoubtedly, this is because Title II of the ADA does not contain a requirement that plaintiffs provide notice to defendants prior to

filing suit. *See Chavez v. L2 Liu Inc.*, No. 20-cv-1388, 2021 WL 1146561, *1 (E.D.N.Y. Feb. 26, 2021) (noting that, although the ADA "is well-intentioned, courts across the country have grappled with a cottage industry of plaintiffs' attorneys who, encouraged by the statute's attorney's fee provision, bring suits to extract nuisance value settlements by identifying ADA violations with no intention of seeking remediation. These nuisance value settlements are achieved with relative ease as plaintiffs are not required to exhaust administrative remedies. Furthermore, as plaintiffs are not required to give notice to defendants prior to filing their lawsuit, they can begin incurring attorney's fees even before defendants are aware of the alleged ADA violations"); *see also Mark v. New Orleans City*, No. 15-cv-7103, 2017 WL 2152367, *3 (E.D. La. May 16, 2017) (noting that there is no notice and cure provision prior to commencing suit under Title II of the ADA). While it is true that a plaintiff seeking compensatory damages under Title II of the ADA must establish intentional discrimination and the defendant's notice is necessary to making this showing, no such requirement exists for an award of declaratory and injunctive relief.[4] *See Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 573-74 (5th Cir. 2018) (noting that a plaintiff seeking monetary damages under Title II of the ADA or RA must establish that the discrimination was intentional, while no such showing is required for declaratory and injunctive relief) (citations omitted). Accordingly, the Court finds this conclusory argument to be without merit.

Similarly, Plaintiff contends that Defendant was required to point to "non-structural alternatives it had adopted in lieu of barrier modification," which would have foreclosed

---

[4] In another case brought by Plaintiff in the Northern District, in which he was also represented by Andrew Bizer, Plaintiff argued in response to a motion to dismiss that "the ADA does not require pre-suit notice," while also noting that "notice may be relevant to proving that Defendant ... acted with deliberate indifference." *Woods v. City of Rome*, No. 6:22-cv-628, 2024 WL 3377453, *14 (N.D.N.Y. July 11, 2024).

Plaintiff's claims without the need for litigation. *See* Dkt. No. 52 at 5 (citing 28 C.F.R. § 35.150(b)(1)). The regulation on which Plaintiff relies, 28 C.F.R. § 35.150(b)(1), provides as follows: "A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section." Plaintiff is correct that this provision allows for municipalities to provide non-structural, alternative methods of achieving compliance with the ADA. Plaintiff is incorrect, however, that a request for alternative methods is a pre-requisite to filing this action.

Turning to the substance of Defendant's argument, the May 19, 2023, General Release from the prior action contains a section entitled "Mutual Release," which reads as follows:

> The Plaintiff hereby releases the Defendant (and the Defendant's parent companies, subsidiaries, divisions, political agencies, political subdivisions, affiliates, related companies, predecessors, successors, heirs, executors, officials, administrators, assigns, members, shareholders, directors, officials, officers, employees, agents, attorneys, and lessors of and lessees at the premises or property in question) **from any and all claims for any relief to the ADA, 42 U.S.C. § 12181, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, such as the claims that were asserted or could have been asserted in the above-captioned action.**"

Dkt. No. 49-10 at 3 (emphasis added).

The language of the General Release is plain and unambiguous, as well as broad in scope. The General Release bars Plaintiff from bringing any ADA and RA claims that were asserted in the prior action "or could have been asserted in the above-captioned action." *Id.* Although Plaintiff contends that he could not have asserted the claims in this action because he did not know about the alleged ADA and RA violations at the Parks until April 2023, whereas the prior action was commenced on September 14, 2021, his argument is misplaced. Nothing precluded Plaintiff from moving to amend his complaint in the prior action to include the allegations in this action once the violations became known to him. *See Dechberry v. New York City Fire Dep't*,

124 F. Supp. 3d 131, 142 (E.D.N.Y. 2015) ("'[W]ords of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies'") (quoting *Tromp*, 465 Fed. Appx. at 52); *see also Castro v. City of New York*, No. 11-cv-5379, 2012 WL 5289490, *3 (E.D.N.Y. June 26, 2012) (dismissing claims as barred by a general release where plaintiff had ample opportunity to include later claims in prior action, as events that formed basis of later claims occurred several months before settlement was reached).

At the time Plaintiff signed the General Release – May 19, 2023 – he was aware of the basis for the claims brought in this action based on the fact that his four letters to the City's Commissioner of Parks indicated that he visited the four Parks and observed the complained of conditions in April 2023. *See* Dkt. No. 49-1; *see also* Dkt. No. 49-2 at 2 (noting that Plaintiff's four letters were sent to Defendant on May 19, 2023). As such, the undisputed facts establish that Plaintiff knew of the conditions at the Parks at issue in the present matter and that his claims were ripe for judicial review on the date that he signed the General Release in the prior action.[5] Courts have consistently held that general releases similar to the one in the present matter preclude subsequent litigation relating to events that arose before the execution of a general release entered into between the same parties. *See Walker v. Corizon*, 764 Fed. Appx. 78, 79-80 (2d Cir. 2019) (holding that the district court correctly determined that the plaintiff's civil rights claims were

[5] The General Release also contains a provision that provides as follows: "The Parties acknowledge that each party has reviewed the participated in the drafting of this General Release and that the rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in its interpretation." Dkt. No. 49-10 at 4. As such, Plaintiff is precluded from relying on the general rule that any ambiguities be construed against the drafter.

precluded by a general release entered in a prior civil rights action); *Mateo v. Carinha*, 799 Fed. Appx. 51, 53-54 (2d Cir. 2020) (same); *Dechberry*, 124 F. Supp. 3d at 142-44, 161 (holding that the plaintiff's Title VII and ADA claims were precluded by a settlement agreement/general release from a prior lawsuit); *Syville v. City of New York*, No. 20-cv-4633, 2022 WL 1549795, *5-6 (S.D.N.Y. May 17, 2022) (holding that the plaintiff's claims under the ADA, RA, and other federal laws were precluded by a general release entered into in a previous similar lawsuit); *Johnson v. City of New York*, No. 21-cv-10535, 2023 WL 5629232, *3-5 (S.D.N.Y. Aug. 31, 2023) (holding that the plaintiff's civil rights action was precluded by a general release entered in an earlier civil rights case); *Genao v. Ruiz*, No. 24-cv-2077, 2025 WL 219160, *3-5 (S.D.N.Y. Jan. 16, 2025) (same); *Drew v. City of New York*, No. 18-cv-10714, 2019 WL 3714932, *3-4 (S.D.N.Y. Aug. 6, 2019) (same); *Vincenzo v. Wallkill Cent. Sch. Dist.*, No. 1:21-cv-308, 2022 WL 913094, *10-12 (N.D.N.Y. Mar. 29, 2022) (same).

Moreover, courts have found parties' intent to be clear where they entered into an agreement that explicitly included the term "general release," even doing so where one party was *pro se* and later asserted confusion as to the meaning and effect of the term. *See Duran v. J.C. Refinishing Contracting Corp.*, 421 Fed. Appx. 20, 22 (2d Cir. 2011) (rejecting a *pro se* plaintiff's claim that he was "misled about the scope of the release" because "[r]eview of the transcript below makes clear that [the plaintiff] agreed to 'execute *general releases* on a standard ... form'") (emphasis in original); *Melwani v. Jain*, No. 02-cv-1224, 2004 WL 936814, *6 (S.D.N.Y. Apr. 29, 2004) (finding that, where a *pro se* plaintiff agreed to "general releases" on the record, his "bald and belated assertion that he did not understand the nature of the releases to which he agreed cannot serve to invalidate the on-the record agreement"). Here, Plaintiff was represented by counsel in the prior action and nothing in the record suggests that the General Release was not

entered into knowingly and voluntarily.

Additionally, if Plaintiff and Defendant had desired to enter into a limited release, barring only claims arising out of the specific events alleged in the prior action, they could have expressly done so, but they did not. *See Tromp*, 465 Fed. Appx. at 53; *see also Bolling v. City of New York*, No. 18-CV-5406, 2020 WL 8671940, *4-5 (S.D.N.Y. Nov. 19, 2020) (holding that incident giving rise to lawsuit not exempted from release when another incident was listed as exception but not the one in question). As such, because no exception was made for any other ADA or RA claims or cases that pre-dated the General Release, the current action is not exempted from the release. When general language is used in the release, "the release is to be construed most strongly against the releaser," and "the burden is on the releaser to establish that the release should be limited." *Middle E. Banking Co. v. State Street Bank Int'l*, 821 F.2d 897, 907 (2d Cir. 1987). The release terms clearly and unambiguously encompass Plaintiff's claims in the instant action and no exceptions apply.

To the extent that Plaintiff is attempting to argue that he did not intend for the General Release to reach the present claims, his argument fails. "Where a contract is clear and unambiguous on its face, the intent of the parties must be gleaned within the four corners of the instrument, and not from extrinsic evidence." *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (citations omitted); *see also Mateo v. Carinha*, 799 Fed. Appx. 51, 54 (2d Cir. 2020) ("The language of the notably broad General Release is clear on its face. In such cases, court should generally interpret the contract without reference to extrinsic evidence"). A clear, unambiguous contract will be enforced according to its terms, "regardless of one party's claim that he intended something else." *Kay–R Elec. Corp. v. Stone & Webster Const. Co., Inc.*, 23 F.3d 55, 58 (2d Cir. 1994) (citation omitted); *accord Uribe v. Merchants Bank of N.Y.*, 91 N.Y.2d 336, 341

(1998). The language of the General Release is clear and unambiguous and, therefore, Plaintiff's arguments regarding intent must fail.

Accordingly, given that the same parties herein executed the General Release in *Woods v. City of Utica*, No. 6:21-cv-1015 (N.D.N.Y.), which agreed to dispose of any and all claims, including ADA and RA claims that were or could have been brought at the time the General Release was executed, and further given the General Release's terms indicating that the parties were on equal footing in drafting and interpreting the document, and that they reviewed and intended to be bound by it, the Court finds that this action is barred by the General Release. As such, Plaintiff's motion for partial summary judgment is denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Plaintiff's motion for partial summary judgment (Dkt. No. 39) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.[6]

**IT IS SO ORDERED.**

Dated: May 29, 2025
Albany, New York

Mae A. D'Agostino
U.S. District Judge

[6] Although the Court has determined that this action is barred by the General Release, this case will remain open because Defendant did not cross move for summary judgment on this ground. Accordingly, the Clerk of the Court shall schedule a conference call with counsel for both parties to determine how this case should proceed or whether judgment should be entered in Defendant's favor.